UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SAMUEL JONES, as assignee of STUART
CREGGY,

               Plaintiff,

    -against-

PAUL WARREN, LORRAINE WARREN,
BENJAMIN WARREN and "MARY"
WARREN,

               Defendants.
------------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 12-CV-5346 (FB) (JMA)

*Appearances:*
*For the Plaintiff:*
NORMAN ALAN KAPLAN, ESQ.
111 Great Neck Road
Great Neck, New York 11021

*For the Defendants*:
CHRISTOPHER CARLSEN, ESQ.
Clyde & Co US LLP
405 Lexington Avenue
New York, New York 10174

**BLOCK, Senior District Judge:**

        Samuel Jones filed a state-court lawsuit against Paul Warren, Lorraine Warren, Benjamin Warren and "Mary" Warren (collectively, "the Warrens"). The complaint asserted causes of action for money had and received, breach of contract, unjust enrichment, fraud and fraudulent inducement; all causes of action arose out of an unpaid loan allegedly made to the Warrens by Stuart Creggy, who assigned the debt to Jones. The Warrens, all residents of the United Kingdom, removed based on diversity. *See* 28 U.S.C. §§ 1332(a)(2), 1441(a), 1446. They now move to dismiss for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). For the following reasons, the motion is granted.

**I**

As the plaintiff, Jones bears the burden of showing that the Court has personal jurisdiction over the Warrens. *See Metropolitan Life Ins. Co. v. Robertson-Cero Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). When, as here, the issue is raised in a pre-discovery motion to dismiss, the plaintiff may defeat the motion "by pleading in good faith legally sufficient allegations of jurisdiction." *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998) (citations and internal quotation marks omitted). In other words, the plaintiff must make a "*prima facie* showing" of jurisdiction. *Id.* (citations and internal quotation marks omitted). If he or she succeeds, the Court may order jurisdictional discovery and, depending on the facts adduced, conduct an evidentiary hearing at which the plaintiff must establish jurisdiction by a preponderance of the evidence. *See Metropolitan Life*, 84 F.3d at 567. No jurisdictional discovery need be ordered if the plaintiff cannot even make his or her *prima facie* showing. *See Hunter v. Deutsche Lufthansa AG*, 863 F. Supp. 2d 190, 199 (E.D.N.Y. 2012) (citing *Jazini*, 148 F.3d at 184).

Jones's complaint alleges that jurisdiction is based on his "residence in Queens County, City and State of New York." Notice of Removal, Ex. A ("Verified Complaint") ¶ 34. That allegation is plainly insufficient. However, Jones has made additional allegations in his response to the Warrens' motion to dismiss. They are deemed included in the jurisdictional predicate for this action, and can be summarized as follows:

In the late 1990s, several individuals affiliated with Westfield Financial Corporation ("Westfield"), a New York-based brokerage firm, perpetrated a scheme in which they formed multiple offshore corporations to purchase unregistered United States

2

securities. Since American citizens are not permitted to purchase such securities, the conspirators falsely represented that the purchasing corporations were owned by foreigners.

The scheme was eventually discovered, leading to guilty pleas by four of the conspirators. In addition, the New York County District Attorney obtained an indictment against Andrew Warren, a London-based solicitor who had given legal advice to the conspirators. Andrew Warren is not related to the Warrens, and the 97-page indictment did not mention any of them.

Shortly after Andrew Warren's indictment in June 1999, British authorities arrested Paul Warren and charged him with setting up foreign bank accounts through which the offshore corporations conducted their stock purchases. He was later convicted and sentenced by a British court.

Prior to his arrest, Paul Warren asked Creggy to lend him GBP200,000 (approximately $334,448) to help his children, Benjamin and Gemma, acquire property in London.[1] In Creggy's opinion, Paul Warren asked for the loan because "it would raise a 'red flag' with investigating authorities if he gifted such a substantial amount of money to his children while under investigation for his participation in a fraudulent stock scheme." Decl. of Stuart Creggy (Jan. 9, 2013) ¶ 8.

When Paul Warren failed to repay the loan, Creggy sued him and his wife, Lorraine Warren, in Switzerland. The Swiss courts dismissed the case for lack of

---

[1] The complaint refers to Gemma Warren by the fictitious name "Mary" Warren.

3

jurisdiction. Creggy subsequently assigned his interest in the loan to Jones, leading to the present lawsuit.

## II

"In diversity cases . . . , personal jurisdiction is determined by the law of the state in which the district court sits," *DiStefano v. Carrozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001), subject only to the limitation that the exercise of jurisdiction authorized by state law must comport with due process, *see Metropolitan Life*, 84 F.3d at 567. Jones argues that Paul Warren's alleged connection to the Westfield stock-fraud conspiracy subjects all of the Warrens to the Court's jurisdiction under N.Y.C.P.L.R. § 302(a)(1), or, in the alternative, under N.Y.C.P.L.R. § 301. The Court addresses each statutory provision in turn.

### A. § 302(a)(1)

Section 302(a)(1) confers jurisdiction over "any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state." The statute creates "specific" jurisdiction, meaning that it is limited to causes of action "'arising from' the transaction of such business." *Frummer v. Hilton Hotels Int'l, Inc.*, 19 N.Y.2d 533, 535 (1967) (quoting N.Y.C.P.L.R. § 302(a)). Thus, "[t]o determine the existence of jurisdiction under section 302(a)(1), a court must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether th[e] cause of action 'aris[es] from' such a business transaction." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (citing *Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*, 7 N.Y.3d 65, 71 (2006)).

4

*1. "Transacts Any Business"*

There is no claim that any of the Warrens have ever set foot in New York, let alone transacted business here. Rather, Jones's theory is that the actions of the Westfield conspirators—many of which took place in New York—should be attributed to Paul Warren.

New York courts have held that "a co-conspirator can be an agent" for purposes of § 302(a)(1). *Small v. Lorillard Tobacco Co.*, 679 N.Y.S.2d 593, 605 (1st Dep't 1998); *see also Reeves v. Phillips*, 388 N.Y.S.2d 294, 296 (1st Dep't 1976) ("The acts of a co-conspirator may, in an appropriate case, be attributed to a defendant for the purpose of obtaining personal jurisdiction over that defendant."). To establish an agency relationship, however, a plaintiff must show that the alleged agent acted "for the benefit of and with the knowledge and consent" of the foreign defendant, and that the foreign defendant "exercised some control" over the alleged agent. *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988).

This Jones cannot do. Even assuming that Paul Warren benefitted from, was aware of, and consented to the New York activities of the Westfield conspirators, Jones's allegations do not even support an inference that Paul Warren exercised any control over those individuals. If anything, Jones's submissions suggest the opposite: The indictment against Andrew Warren describes Westfield's chairman and president as those "in charge of the criminal enterprise," Decl. of Stuart Creggy, Ex. 1, while Creggy attests (without corroboration) that Paul Warren merely helped those in charge "set[] up bank accounts."

5

*Id.* ¶ 7. There is, moreover, absolutely no showing that Paul Warren's wife or children had *any* role in the Westfield conspiracy.

## 2. "Arising From"

In any event, Jones's causes of action relating to the loan do not "arise from" the activities of the Westfield conspiracy. "New York courts have held that a claim 'aris[es] from' a particular transaction when there is 'some articulable nexus between the business transacted and the cause of action sued upon,'" *Sole Resort, S.A. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (quoting *McGowan v. Smith*, 52 N.Y.2d 268, 272 (1981)), "or when 'there is a substantial relationship between the transaction and the claim asserted,'" *id.* (quoting *Kreutter*, 71 N.Y.2d at 467). "A connection that is 'merely coincidental' is insufficient to support jurisdiction." *Id.* (quoting *Johnson v. Ward*, 4 N.Y.3d 516, 520 (2005)).

Jones's causes of action "arise from" the nonpayment of a loan. The only connection between the loan and the Westfield conspiracy is Creggy's opinion that Paul Warren could not use his own funds for fear of arousing investigators' suspicions. But even assuming that Creggy is correct, a borrower's motivation is entirely irrelevant to his obligations to his lender. The Court easily concludes that any connection between the loan and the New York activities of the Westfield conspiracy is "merely coincidental." *Cf., e.g.*, *Johnson*, 4 N.Y.3d at 520 (cause of action for negligence arose out of defendant's driving in New Jersey, not obtaining license and vehicle registration in New York).

6

**B. § 301**

Section 301 provides that "[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." Presence within the state having long been recognized as a valid basis for personal jurisdiction, *see Rawstone v. Maguire*, 265 N.Y. 204, 207 (1934) (citing *Pennoyer v. Neff*, 95 U.S. 714 (1877)), "a foreign corporation is amenable to suit in [New York] courts if it is 'engaged in such a continuous and systematic course of "doing business" here as to warrant a finding of its "presence" in this jurisdiction.'" *Frummer*, 19 N.Y.2d at 536 (quoting *Simonson v. International Bank*, 14 N.Y.2d 281, 285 (1964)). Although "[i]t is a matter of debate whether an individual, as opposed to a business entity, may be properly subjected to personal jurisdiction under the 'doing business' standard of § 301," *Torres v. Monteli Travel, Inc.*, 2011 WL 2670259, at *5 n.3 (E.D.N.Y. July 7, 2011), the Court will assume that § 301 applies to individuals.

Unlike § 302, § 301 confers "general" jurisdiction and does not require "a connection between the cause of action in issue and the foreign defendant's business activities within the State." *McGowan*, 52 N.Y.2d at 272. On the other hand, it requires more than a single transaction. A defendant is subject to jurisdiction under § 301 only "if it does business in New York 'not occasionally or casually, but with a fair measure of permanence and continuity.'" *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir. 1985) (quoting *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267 (1917)).

Jones's theory of jurisdiction under § 301 rests on the same predicate as his theory under § 302—the activities of the Westfield conspirators. Accordingly, it fails for the reasons stated *supra* Part II.A.1. In addition, it fails because the "defendant [must] be

7

shown to have been 'doing business' at the time when the action was commenced." *Lancaster v. Colonial Motor Freight Line, Inc.*, 581 N.Y.S.2d 283, 286 (1st Dep't 1992) (citing *Gaboury v. Central Vermont Ry.*, 250 N.Y. 233, 236–237 (1929)).  As the First Department explained, "[t]his is crucial to the concept of 'presence' upon which the jurisdiction is based, since the defendant corporation must be 'here' and therefore subject to the state's power, at the very time of the exercise of the jurisdiction itself."  *Id*.  The Westfield conspiracy was discovered, and its members prosecuted, in 1999.  There can be no serious claim that it continued "doing business" when Jones filed his complaint in 2012.  *Cf. id.* ("Since it is not denied that Colonial had entirely ceased its operations in 1988, it would be impossible to demonstrate that it was 'doing business' here some two years later, in August 1990, the crucial time period when the action was commenced.")

### III

Since Jones has failed to make a *prima facie* showing that New York law authorizes the exercise of jurisdiction over the Warrens, the motion to dismiss is granted. Although Jones has not sought leave to amend, the Court notes that amendment would be futile because the facts alleged conclusively establish that the Court lacks personal jurisdiction over the Warrens.  *Cf. Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) ("[L]eave to amend will be denied as futile only if . . . it appears beyond doubt that the plaintiff can plead no set of facts that would entitle him to relief.").

In their reply memorandum, the Warrens argue that Jones's opposition to their motion was frivolous, and that sanctions should be imposed under Federal Rule of Civil Procedure 11. The rule, however, requires a separate motion, which triggers a 21-day

8

"safe harbor" period during which the allegedly frivolous filing may be withdrawn. *See* Fed. R. Civ. P. 11(c)(2). Because Jones did not have an opportunity to withdraw his opposition, the Warrens' request for sanctions is denied. *See Star Mark Mgmt, Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d Cir. 2012) ("The safe-harbor provision is a strict procedural requirement.").

**SO ORDERED.**

/S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
July 9, 2013

9